**\*NOT FOR PUBLICATION\***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| PET GIFTS USA, LLC, | : |
| Plaintiff, | : |
| v. | : Civ. Action No. 14-3884 (FLW)(DEA) |
| IMAGINE THIS COMPANY, LLC, TWELVE, INC., BEVERLY MOSS, AND MICHAEL MOSS | : OPINION |
| Defendants. | : |

**WOLFSON**, **United States District Judge**

This lawsuit concerns the allegedly unlawful use of designs created by plaintiff Pet Gifts USA, LLC ("Plaintiff" or "Pet Gifts"). Plaintiff asserts the following causes of action against defendants Imagine This Company, LLC ("ITC"), Twelve, Inc. ("Twelve"), Beverly Moss, and Michael Moss ("Defendants," or "ITC"): (1) in Count One, consumer fraud, pursuant to N.J.S.A. 56:8-1, et seq.; (2) in Count Two, conversion of property; (3) in Count Three, breach of contract; (4) in Count Four, breach of the duty of loyalty; (5) in Count Five, conversion of artwork; and (6) in Count Six, trade dress infringement, pursuant to N.J.S.A. 56:4-1 and New Jersey common law. Defendants have moved to dismiss all claims in the Complaint.

For the reasons set forth below, the Court determines that additional facts are necessary to conduct a choice of law analysis—an inquiry which is seminal to deciding Defendants' motion—and accordingly orders the parties to conduct limited discovery on the choice of law question before filing supplemental briefs on this issue.

**I.  Background**

The following allegations are taken from Plaintiffs' Complaint and are assumed as true for the purposes of this motion to dismiss. Pet Gifts USA, LLC ("Pet Gifts") is a New Jersey limited liability company operated by Wayne and Elicia Kessler, its sole owners. Compl. at ¶1. Pet Gifts sells novelty pet products in both retail and wholesale markets, "and has been selling such items, under the names "Pet Gifts USA LLC," "Animal Accents," and "Arks-n-Barks" since its formation in January 2001." *Id.*

On February 17, 2007, Elicia Kessler first met Beverly Moss while Kessler was working as a sales representative for Arks-n-Barks, at the Henrico Pet Expo, a local retail event in Virginia. *Id.* at ¶ 8. At that meeting, Beverly Moss observed that Elicia Kessler was selling novelty printed magnets for pet owners and offered Kessler ITC's printer services.[1] *Id.* at ¶ 9.

In late February 2007, "the company Elicia Kessler had previously been a sales representative for ceased operation." *Id.* at ¶ 11. Thereafter, Elicia Kessler decided to market her own line of novelty pet products through Pet Gifts.[2] *Id.* Pet Gifts alleges that Elicia Kessler contacted ITC, "on behalf of Pet Gifts, as a customer seeking to use [ITC's] printing services." *Id.* at ¶ 13.

According to Pet Gifts, Elicia Kessler provided Beverly Moss with the novelty pet magnet designs she had developed for Pet Gifts and Moss indicated that ITC could print them. *Id.* at ¶ 15. On March 9, 2007, Beverly Moss sent Elicia Kessler a letter offering ITC's printing and production services for Pet Gift's magnet designs. Beverly Moss also sent a sample magnet employing a stock

---

[1] At the time, Elicia Kessler declined, but she retained Beverly Moss's contact information. *Id.* at ¶ 10.

[2] Pet Gifts alleges that at that time, Elicia Kessler developed a portfolio of pet-related magnets for display on purchasers' automobiles and elsewhere, featuring humorous phrases of her own invention, such as "Bite Me" and "Who Rescued Who"? Compl. at ¶ 12.

paw print design as the background for one of the phrases Kessler had provided ITC. *Id.* at ¶15. In April 2007, Elicia Kessler provided specifications for printing various Pet Gifts designs to ITC, including a design with the phrase "Who Rescued Who?" enclosed in a paw print shaped magnet, and the Phrase "I ♥ My [name of breed]" in a magnet shaped like a dog bone. *Id.* at ¶ 16. Prior to fulfilling the print order, Beverly Moss sent Pet Gifts a proof sheet to ensure that the magnets would be printed in accordance with Kessler's specifications. *Id.* at ¶ 17. According to Pet Gifts, at the bottom of the proof sheet was illegible text about which Kessler contacted ITC. *Id.* at ¶ 18. Pet Gifts alleges that Beverly Moss, on behalf of ITC, "stated that the . . . text simply provided that Pet Gifts would be required to accept production runs that were ten percent over or under the order amount." *Id.*

According to Pet Gifts, "[w]ith that assurance, Pet Gifts entered the agreement, and placed its first order for novelty magnets." *Id.* at ¶ 19. For several months thereafter, Pet Gifts used ITC as its exclusive printer for its abovementioned line of novelty pet products, as well as for developing custom magnet orders with phrases Pet Gifts designed. *Id.* Pet Gifts alleges that it also used ITC's services to develop and produce distinctive packaging for the magnets, including a "highly recognizable printed 'header' card atop a clear plastic bag containing the product." *Id.* at ¶ 20.

On May 18, 2008, while attending a trade show, "Wayne Kessler first discovered that ITC had printed and produced magnets imprinted with the same phrases and identical design to those that had been developed by Elicia Kessler" and which, according to Pet Gifts, ITC had printed for Kessler. *Id.* at ¶ 21. Pet Gifts alleges that ITC supplied the magnets to GoToRovers.com, a competitor of Pet Gifts. *Id.* According to Pet Gifts, "[i]n all respects these magnets were indistinguishable from the magnets being sold by Pet Gifts, including the packaging of the magnets, except that the header card for the packaging in which they were contained provided

[ITC's] name and website."[3] *Id.* at ¶ 22. In June 2008, Pet Gifts discovered that another competitor, Magyar Enterprises, Ltd., was also selling Pet Gifts's magnets "in virtually indistinguishable packaging but made in plastic and bearing Magyar's name." *Id.* at ¶ 24. According to Pet Gifts, since that time, ITC has "continued to sell Pet Gifts's magnets, both to Pet Gifts's competitors and directly to Pet Gifts's customers, despite Pet Gifts's repeated efforts to have [ITC] cease and desist." *Id.* at ¶ 25.

On May 7, 2014, Pet Gifts filed this six-count Complaint in state court against Defendants. On June 17, 2014, Defendants removed the case. Thereafter, in lieu of an answer, Defendants filed this motion to dismiss.[4]

---

[3] According to Pet Gifts, on May 29, 2008, Pet Gifts demanded that ITC cease and desist from producing Pet Gifts's products for sale to GoToRover.com. *Id.* at ¶ 23.

[4] In a footnote, Defendants request, in the alternative, that this suit be transferred to the Eastern District of Virginia under 28 U.S.C. § 1404(a), generally arguing that the public and private interests set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947), militate in favor of the transfer. Defs.' Br. at 12.
The private interests factors of the transfer analysis include:

> [1] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, whether the claim arose elsewhere, [3] the convenience of the parties as indicated by their relative physical and financial condition the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [4] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The public interest factors include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* "It is well-settled that the burden on a § 1404(a) motion must be borne by the party seeking to transfer the case, and that "the motion must not be lightly granted." *Yocham v. Novartis Pharm.*

## II.     Discussion

### a.  Choice of Law

Defendants first move to dismiss because they argue that Virginia law applies and under Virginia law, Plaintiff's claims are time-barred. Plaintiff's Complaint, however, asserts causes of action under New Jersey law and under New Jersey law, some of the claims may not be time-barred; Plaintiff asserts that it is premature to determine which state's laws apply.

A federal court sitting in diversity jurisdiction must apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Gen. Star Nat'l Ins. Co. v. Liberty Mutual Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992). New Jersey has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 142–43 (2008). New Jersey's most significant relationship test consists of two prongs. The first prong of the analysis requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict between the laws exists. *Camp Jaycee*, 197 N.J. at 143–44, (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). Where there is no actual conflict, the analysis ends and the court applies the law of the forum state. *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997); *Rowe v. Hoffman–La Roche, Inc.*, 189 N.J. 615, 621 (2007). However, if the court finds that a conflict does exist, the court must

---

*Corp.*, 565 F.Supp. 2d 554, 557 (D.N.J. 2008) (citing Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3848).

     Here, because Defendants do not offer any specific arguments as to which factors weigh in favor of transfer, the Court does not find that Defendants have met their burden of proof in showing that the *Gilbert* factors weigh in favor of overcoming Plaintiff's choice of forum in its home state and transferring the case to the Eastern District of Virginia. Accordingly, Defendants' motion to transfer in the alternative is denied.

move to the second prong and determine which jurisdiction has the "most significant relationship" to the claim at issue. *Camp Jaycee*, 197 N.J. at 136.

Here, Defendants argue, and Plaintiff does not dispute, that under Virginia law, "[m]ost claims would be subject to a two-year statute of limitations," the UCC statute of limitations for the sale of goods is four years, and "[e]ven if somehow characterized as claims for injury to property, a five year period would apply." Defs.' Br. at 8–9 (citing Va. Code Ann. § 8.01-243(A) (setting forth the two-year general statute of limitations for personal injury and fraud claims); *id.* §8.01-248 (setting forth the two-year catch-all statute of limitations); *id.* § 8.2-725 (setting forth the four-year general statute of limitations for breaches of contracts for sale); *id.* § 8.01-243 (setting forth the five-year statute of limitations for injury to property claims)). Here, Plaintiff states that it first discovered that ITC was selling Pet Gifts's designs to other companies on May 18, 2008. Defendants claim that therefore, Plaintiff's causes of actions accrued on this date. Given that Plaintiff filed suit on May 7, 2014, nearly six years after the date of discovery, Defendants argue that under Virginia law, all of Plaintiff's claims are time-barred.

Defendants acknowledge, however, that if New Jersey law applies, "certain of Plaintiff's claims . . . survive, at least on the pleadings," though they do not state which, if any, claims would also be time-barred under New Jersey law.[5] Defs.' Br. at 10. Upon an independent review of the pleadings, it appears that none of Plaintiff's claims would be potentially time-barred under New

---

[5] Plaintiff, in its opposition brief, does not dispute that under Virginia law, its claims would be time-barred; neither does Plaintiff discuss which of its claims are not time-barred under New Jersey law. Rather, Plaintiff exclusively argues that it is premature to decide whether Virginia or New Jersey law applies. *See* Pl.'s Opp. Br. at 6–8.

Jersey law, as a six year statute of limitations seems to apply.[6] Therefore, a conflict exists between Virginia and New Jersey law as to all of Plaintiff's claims, and I must move to the second step of the choice of law analysis.

Under the second step of the analysis, the Court determines which state has the "most significant relationship" to the claim by weighing the factors set forth in the Restatement section that corresponds to Plaintiffs' cause of action. *See, e.g.*, *Nafar v. Hollywood Tanning Sys.*, 339 Fed. App'x 216, 220 (3d Cir. 2009) (citing *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 463 (D.N.J. 2009)); *Camp Jaycee*, 197 N.J. at 143–44. Plaintiff asserts consumer fraud, breach of

---

[6] Plaintiff asserts (1) a NJCFA claim, (2) two conversion claims, (3) a breach of contract claim, (4) a breach of the duty of loyalty claim and (5) a statutory unfair competition claim for trade dress infringement. As stated earlier, NJCFA claims are subject to a six year statute of limitations. *See Spera*, 2014 WL 1334256, at *3 (citing N.J.S.A. 2A:14-1). In New Jersey, claims of breaches of contracts for the sale of goods are governed by the four-year statute of limitations. *See Ford Motor Credit Co. v. Arce*, 348 N.J. Super. 198, 200 (App. Div. 2002) (citing N.J.S.A. 2-725(2)). Otherwise, however, the six-year limitations period applies. *See Cnty. of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 644 (D.N.J. 2007), *as amended* (Nov. 5, 2007), *aff'd*, 351 Fed. App'x 662 (3d Cir. 2009). Here, neither party raises the issue of whether the contract in question is for the sale of goods and thus subject to a four year statute of limitations. For the purposes of this analysis, the Court will assume without deciding that the six year limitations period applies.

Conversions claims regarding property under New Jersey law are also governed by a six year statute of limitations. *See, e.g.*, *Buyofski v. St. Stephens Roman Catholic Church*, Civ. No. A-2639-04T2, 2006 WL 2069149, at *5 (N.J. Super. Ct. App. Div. July 27, 2006) ("Conversion claims are generally governed by the six-year statute.") (citing N.J.S.A. 2A:14-1); *see also Dynasty Bldg. Corp. v. Ackerman*, 376 N.J. Super. 280, 287 (App. Div. 2005). Claims alleging a breach of the duty of loyalty are a type of fiduciary claim that is also subject to a six year statute of limitations in New Jersey. *See, e.g.*, *Clark v. Prudential Ins. Co. of Am.*, No. CIV.08-6197 DRD, 2009 WL 2959801, at *16 (D.N.J. Sept. 15, 2009) (citing N.J.S.A. 2A:14-1). Finally, statutory unfair competition claims are also governed by a six-year statute of limitations. *Kelly v. Estate of Arnone ex rel. Ahern*, No. CIV A 08-6046(SDW), 2009 WL 2392108, at *7 (D.N.J. Aug. 3, 2009) ("The New Jersey six-year statute of limitations . . . applies to common law claims for trademark infringement and both common and state law unfair competition claims.") (citing *AT & T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994)).

contract, fiduciary duty, wrongful conversion, and trade dress infringement claims. Accordingly, each type of claim must be analyzed separately under the second step of the choice of law analysis, under the Restatement's relevant factors of analysis.[7]

---

[7] Choice of law analysis for NJCFA claims is governed by Section 148 of the Restatement, which pertains to claims sounding in fraud and misrepresentation. *Maniscalco v. Brother Int'l (USA) Corp.*, 707 F.3d 202, 207 (3d Cir. 2013); *see also* Restatement (Second) of Conflict of Laws § 148. "Section 148 has two subsections: Section 148(1) applies when the defendant made the fraudulent representations in the same state in which the consumer relied on the representations, whereas Section 148(2) governs when the misrepresentations and the reliance occurred in different states." *Rapid Models & Prototypes, Inc. v. Innovated Solutions*, --- F.Supp. 3d ---, Civ. No. 14-277 NLH/KMW, 2014 WL 7384186, at *8 (D.N.J. Dec. 29, 2014) (citing Restatement § 148). If Section 148(2) applies, the following contacts must be weighed:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement § 148(2).

Breach of contract claims are governed by Section 188 of the Restatement. *See, e.g., Snyder v. Farnam Companies, Inc.*, 792 F.Supp. 2d 712, 720 (D.N.J. 2011); *see also* Restatement § 188. "The Restatement requires courts to consider: '(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.'" *Snyder*, 792 F.Supp. 2d at 720 (quoting Restatement § 188).

Finally, conversion claims, breach of fiduciary duty claims, and trademark infringement claims, sounding in tort, are governed by Section 145 of the Restatement. *See, e.g., Clark v. Prudential Ins. Co. of Am.*, Civ. No. 08-6197 DRD, 2009 WL 2959801, at *17 (D.N.J. Sept. 15, 2009) (applying Section 145 to a breach of fiduciary duty claim); *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 431 (App. Div. 2011) (classifying conversion as a tort); *Benihana of Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 725 (D. Del. 2011) (applying Section 145 to a conversion claim under the "most significant relationship" choice of law analysis); *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994) (classifying trademark infringement as a "species of tort"); *see also* Restatement § 145(2). Under Section 145, the "[c]ontacts to be taken into account" in assessing the most significant relationship to such claims

Plaintiff contends that it is premature to determine which law applies, because discovery is needed to determine which state has the most significant relationship to each of Plaintiff's claims. While courts have found that "[s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss," *Harper v. LG Elecs. USA, Inc.*, 595 F.Supp.2d 486, 491 (D.N.J. 2009), where the analysis is fact intensive and a court finds that it lacks a full factual record to make a choice of law determination, a court may postpone the analysis. In *Harper* and in *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011), the courts examined the facts necessary to examine each type of claim to determine whether the choice of law analysis was premature. This Court will do the same.

The only pled facts provided to the Court that are relevant to determining which state has the most significant relationship to Plaintiff's claims are (1) Plaintiff is a citizen of New Jersey, (2) Defendants are citizens of Virginia, and (3) Plaintiff first met Defendant Moss at a trade show in Virginia.[8] Compl. at ¶¶ 1, 8; Notice of Removal. These facts are insufficient to complete New Jersey's choice of law analysis for any of Plaintiff's claims. For example, to determine which state's laws to apply to NJCFA claims, the Court must decide, as a threshold matter, whether the "'plaintiff's action in reliance took place in the state where the false representations were made and received' . . . [or whether] the plaintiff's action in reliance takes place in a different state than where

---

include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement § 145(2).

[8] While Defendants claim in their brief that when Plaintiff mentions in its Complaint that they called Beverly Moss to ask questions about the agreement and the status of their printing request, Beverly Moss was located in Virginia, neither party attaches evidence to corroborate that statement.

9

the false representations were made and received . . . ." *Maniscalco v. Brother Int'l (USA) Corp.*, 707 F.3d 202, 207 (3d Cir. 2013) (quoting Restatement § 148(1)). However, the Court has no information about where the false representations were made and received or where Plaintiff took action in reliance on the false representations. *See generally* Compl. Further, to determine which state's laws apply to a breach of contract claim, two of the factors to be evaluated are the place of contracting and the place of negotiation, *see* Restatement § 188; no facts pertaining to these two factors have been provided to the Court. *See generally* Compl. Finally, one of the relevant factors to determining which state's laws to apply to tort claims (here, Plaintiff's conversion and breach of fiduciary duty claims) is the place where the conduct causing the injury occurred. Restatement § 145(2). While the Court knows that Defendants are citizens of Virginia, that fact alone is not enough to infer that the conduct causing Plaintiff's injury took place in Virginia. *See* Notice of Removal.

Therefore, the Court finds that a choice of law determination on any of Plaintiff's claims would be premature at this stage of the litigation and will postpone the analysis until after the parties have engaged in discovery on this issue.[9] *See, e.g.*, *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011); *In re K–Dur Antitrust Litigation*, 338 F.Supp.2d 517 (D.N.J. 2004); *Harper*, 595 F.Supp.2d at 491. I will also defer my analysis under Rule 12(b)(6) as to the individual causes of action in Plaintiff's complaint until I have ruled on whether New Jersey or

---

[9] Additionally, the Court notes that if New Jersey law were to apply, it appears that at least some of Plaintiff's claims would survive dismissal under the Rule 12(b)(6) analysis. Therefore, completing the choice of law analysis at the outset is critical, because at least some of Plaintiff's claims will live or die based on which state's laws apply.

Virginia law applies to Plaintiff's claims. A Rule 12(b)(6) analysis would be unnecessary if I determine that Virginia law applies to Plaintiff's claims and, as a result, they are time-barred.

    *b. Individual Defendants*

Defendants also argue that Beverly and Michael Moss, as individual defendants, should be dismissed. Plaintiff appears to join the Mosses, as defendants in all six counts, under a corporate veil-piercing theory.

"In New Jersey, two elements must be shown to pierce the corporate veil: First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. *State Capital Title & Abstract Co. v. Pappas Bus. Servs.*, LLC, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (internal quotation marks omitted). In determining whether a unity of interest and ownership exists under the first prong, the Third Circuit has applied six non-binding factors to guide this inquiry:

> [1] gross undercapitalization, [2] "failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."

*State Capital Title & Abstract Co. v. Pappas Bus. Servs.*, LLC, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (quoting *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988)).

"Virginia law provides that a court can pierce the corporate veil only upon showing that "(1) the corporation was the *alter ego*, alias, stooge, or dummy of the other entity; and (2) the corporation was a device or sham used to disguise wrongs, obscure fraud or conceal crime." *William v. AES Corp.*, No. 1:14CV343 JCC/TRJ, 2014 WL 2896012 (E.D. Va. June 26, 2014) (citing *Informatics Applications Grp. Inc. v. Shkolnikov*, 836 F.Supp. 2d 400, 427 (E.D. Va. 2011)).

11

Under either conceptualization of the corporate veil-piercing doctrine,[10] Plaintiff's Complaint fails to allege any facts that would permit Plaintiff to maintain any causes of actions against the Mosses. While Plaintiff claims that the Mosses are the owners and operators of ITC, Plaintiff provides no facts to suggest that the Mosses and ITC had sufficiently overlapping interests and ownership such that they would be considered essentially the same entity. Further, Plaintiff provides no facts to suggest that adherence to the corporate existence would promote any injustice or fraud or that the corporation was a sham used to conceal any wrongful activity in any way. In fact, Michael Moss is only mentioned once in the Complaint, as one of the owners and operators of ITC, and Beverly Moss is mentioned only in connection with her interactions with Elicia Kessler in negotiating and executing the printing contract with Pet Gifts. *See generally* Compl. Such cursory references to the Mosses, absent of any allegations potentially supporting ITC's status as the *alter ego* of the Mosses or of ITC's role as a fraudulent vehicle unfairly shielding the Mosses from personal liability, cannot sustain any individual liability against the Mosses here. *See William v. AES Corp.*, No. 1:14CV343 JCC/TRJ, 2014 WL 2896012 (E.D. Va. June 26, 2014); *see also State Capital Title & Abstract Co. v. Pappas Bus. Servs.*, LLC, 646 F. Supp. 2d 668, 679 (D.N.J. 2009).

Plaintiff argues that it "needs an opportunity to determine whether or not Defendants have used the required formalities in regard to their corporation" and that "[t]o dismiss at this point would not allow Plaintiffs to gather any evidence to that effect." Pl.'s Br. at 20–21. However, the case law is well-settled on this point: A plaintiff "may not attempt to use discovery as a fishing

---

[10] Out of an abundance of caution with respect to this veil-piercing analysis, I assume without deciding for the purposes of this analysis that if Virginia law applies, at least one of Plaintiff's claims may not be time-barred.

expedition . . . to seek out the facts necessary to establish a legally adequate complaint." *White v. Hon Co.*, 520 Fed. App'x 93, 95 (3d Cir. 2013); *see also Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006). Therefore, the Mosses are dismissed as individual defendants.

### III.  Conclusion

Because the Court finds that it lacks a factual record to decide, as a threshold matter, which state's laws apply to each of Plaintiff's claims, the Court orders that the parties conduct limited discovery on whether New Jersey or Virginia law applies to each of Plaintiff's claims. Defendants' supplemental brief in support of its motion to dismiss based on choice of law analysis must be filed on or before March 10, 2015. Plaintiff's supplemental opposition brief is due on or before March 24, 2015. Finally, Defendant's reply is due on or before March 31, 2015. Further, I terminate Defendants' motion to dismiss; Defendants may re-file their motion after the Court makes its choice of law determinations.

Date: February 10, 2015

/s/ Freda L. Wolfson
U.S. District Judge