**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PET GIFTS USA, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. Action No. 14-3884 (FLW)(DEA) |
| | : | |
| IMAGINE THIS COMPANY, LLC AND TWELVE, INC. | : | OPINION |
| | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge**

      Plaintiff Pet Gifts USA, LLC ("Plaintiff" or "Pet Gifts") brought this lawsuit alleging that Defendants Imagine This Company, LLC ("ITC") and Twelve, Inc. ("Twelve") (collectively, the "Defendants") unlawfully used proprietary magnet designs belonging to Plaintiff. Defendants move to dismiss all claims in the Complaint, arguing, in part, that Virginia law applies to Plaintiff's claims, and under Virginia law they are time-barred. However, Plaintiff argues that New Jersey law applies, and under this state's law its claims are not time-barred. In a previous Opinion, the Court determined that additional facts were necessary to conduct a choice-of-law analysis. Accordingly, the Court terminated Defendants' motion to dismiss and ordered the parties to first conduct limited discovery on the choice-of-law question. The parties have completed discovery and submitted supplemental briefs on this issue. Thus, the choice-of-law question is now ripe for review by the Court.

      For the reasons set forth below, Defendants' motion is granted in part and denied in part as follows: the Court dismisses Plaintiff's breach of contract claim as barred by the statute of

1

limitations under both New Jersey and Virginia law, and finds because New Jersey law applies to the remainder of Plaintiff's claims, those causes of action survive.

## I.     Background

As a general matter, a court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, as discussed in further detail below, a court is entitled to look beyond the pleadings when resolving a choice-of-law question. *See e.g. Toll v. Tannenbaum*, 596 Fed. Appx. 108, 111 (3d Cir. 2014); *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 742 (7th Cir. 2008); *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 386 (5th Cir. 1983).

Plaintiff Pet Gifts is a New Jersey limited liability company owned and operated by Wayne and Elicia Kessler in New Jersey, which also does business as "Animal Accents" and "Arks-N-Barks."[1] Kessler Cert. ¶ 1. Pet Gifts sells novelty pet merchandise throughout the United States. Pl.'s Answer to Interrog. No. 3. Defendant ITC is a Virginia limited liability company with its principal place of business in Virginia, which is owned exclusively by Michael and Beverly Moss. Moss Cert. ¶ 2. ITC designs, manufactures, and sells various consumer goods, such as pet-themed

---

[1] There appears to be some confusion as to the relationship between Pet Gifts USA, LLC and Animal Accents. According to Defendants, their dealings were with an entity called Animal Accents, not Pet Gifts. Defs.' Mem. in Supp. of Applying Va. Law p. 3 n. 1. Defendants are unsure as to the relationship between Animal Accents and Pet Gifts, because in the Complaint, Plaintiff stated that Animal Accents was a trade name of Pet Gifts USA, LLC, but in its answers to Defendants first set of interrogatories, Plaintiff states Animal Accents is a New Jersey limited liability company and a predecessor entity to Pet Gifts USA, LLC. Defs.' Mem. p. 3 n. 1. Despite this confusion as to the relationships between these entities, the true nature of their relationship will not affect the choice-of-law question. Therefore, for the purposes of this Opinion, the Court will treat these entities as one entity, Pet Gifts USA, LLC.

magnets, to various resellers throughout the United States, including Virginia and New Jersey. Defendant Twelve is the corporate parent of ITC and a Virginia corporation with its principal place of business in Virginia. *Id.* at ¶ 3.

On February 17, 2007, Ms. Kessler, working as a sales representative for Pet Gifts, first met Ms. Moss at the Henrico Humane Society Pet Expo in Richmond, Virginia. Kessler Cert. ¶ 3; Moss Cert. ¶ 13. At that meeting, Ms. Moss informed Ms. Kessler that ITC provided magnet printing services and gave her a sample brochure. Kessler Cert. ¶ 3. Approximately one to two months later,[2] Ms. Kessler, in New Jersey, telephoned Ms. Moss at ITC, in Virginia, to request printing services of various pet-themed magnets for Pet Gifts. *Id.* at ¶ 4; Moss Cert. ¶ 14. Thereafter, the parties negotiated, via telephone, email, and fax, the print work for a "custom-run" of magnets to be delivered to Pet Gifts in New Jersey. Kessler Cert. ¶¶ 1-7, 12; Moss Cert. ¶¶ 14-15. Throughout the course of these negotiations, Ms. Kessler was located in New Jersey and Ms. Moss was located in Virginia. Kessler Cert. ¶¶ 1-7; Moss Cert. ¶¶ 14-15.

The negotiations for the first order of magnets concluded when Ms. Kessler, in New Jersey, signed and returned a proof sheet detailing the terms of the transaction via fax to ITC, in Virginia. Kessler Cert. ¶¶ 8-10; Moss Cert. ¶ 15. According to Plaintiff, when Ms. Kessler first received the proof sheet for signature from ITC, she found some of the text pertaining to the terms of the transaction illegible. Kessler Cert. ¶¶ 8-9. Ms. Kessler then telephoned Ms. Moss to ascertain the language of the text, and Ms. Moss gave her an explanation. *Id.* at ¶ 9. Plaintiff alleges that during this telephone conversation, Ms. Moss misrepresented the terms of the proof sheet to Ms. Kessler.

---

[2] Ms. Moss certifies that she contacted Ms. Kessler "some weeks later," while Ms. Kessler certifies that she was contacted "approximately two months later." Kessler Cert. ¶ 4; Moss Cert. ¶ 14. This discrepancy has no bearing on the choice-of-law question.

Compl. p. 6, 8 ¶¶ 18, 28-29; Moss Cert. ¶ 17. Specifically, Plaintiff avers that Ms. Moss outlined certain pricing and order sizing terms contained in the proof sheet, but did not mention other terms, including language regarding a license to customers' proprietary designs. Compl. p. 6, 8 ¶¶ 18, 28-29.[3] Ms. Kessler claims that she relied upon Ms. Moss' representations as to the terms of the proof sheet in signing and finalizing the agreement. Kessler Cert. ¶ 10.

For several months thereafter, ITC produced multiple custom orders of magnets and personalized magnet packaging for Pet Gifts according to Plaintiff's specifications. Kessler Cert. ¶¶ 11-21; Moss Cert. ¶¶ 19-20. Except for one or two in-person meetings in Virginia,[4] the parties' communications were made via telephone or email from Virginia to New Jersey, or vice versa. Kessler Cert. ¶¶ 11-14; Moss Cert. ¶¶ 17, 20. All magnets ordered by Pet Gifts were manufactured by ITC in Virginia. Moss Cert. ¶ 17. Generally, orders were shipped from Virginia to Pet Gifts'

---

[3] In larger text the proof sheet provides information regarding the designs of the magnets to be manufactured, quantity, and price. Defs.' Mot. To Dismiss Compl., Ex. A. In smaller text, at the bottom of the page, the proof sheet reads:

> Terms: Upon receipt unless other arrangements approved. This quotation and the prices contained therein are subject to change without notice. 10% Overunder shipment must be considered a complete contract. Invoice is adjusted accordingly. IT will retain all artwork, art, tools and tooling produced by us for the customer's use, free of storage charges. However, all such items and any copies or reproductions thereof are designed for our use and will not be releases or transferred. Customer is responsible for all collection fees, collection costs and attorney fees. 1.5% monthly charge will apply to all unpaid balances. A convenience fee of 4% will be added to all credit card payments. All printed items are not returnable. All products are sold with the understanding that the purchaser will determine the suitability of such products for its purposes. Shipping and Handling charges are additional.

*Id*.

[4] The parties disagree as to the exact number of in-person business meetings that occurred in Virginia. Ms. Kessler certifies that there was only one meeting in Virginia between Pet Gifts and ITC. Kessler Cert. ¶ 18. On the other hand, Ms. Moss Certifies that she met with Ms. Kessler in Virginia at least twice during this period. Moss Cert. ¶ 19.

4

offices in New Jersey, or its agent in New Jersey. Kessler Cert. ¶ 12. However, according to Defendants, on at least one occasion, Pet Gifts requested to pick up its magnet order directly from ITC in Virginia, and on one other occasion, Plaintiff requested delivery of an order to a location in Virginia. Moss Cert. ¶ 21.

On May 18, 2008, while attending a pet industry trade show, Pet Gifts first observed a competing company selling magnets of the same designs as those ITC had previously manufactured for Pet Gifts, but imprinted with ITC's contact information, rather than Pet Gifts' information. Kessler Cert. ¶ 19. These magnets were marketed for substantially lower prices. *Id*. at ¶ 19. Additionally, Pet Gifts has observed these same magnets sold by its competitors at retail trade shows in Edison and Atlantic City in New Jersey. *Id.* at ¶ 22. ITC certifies that it sells its magnets to resellers and other customers "over all or nearly all" of the United States, including both New Jersey and Virginia. Moss Cert. ¶ 7.

On May 7, 2014, nearly six years later, Pet Gifts filed its Complaint in state court against Defendants, alleging (1) consumer fraud, pursuant to N.J.S.A. 56:8-1, et seq. (the "NJCFA" claim); (2) conversion of property; (3) breach of contract; (4) breach of the duty of loyalty; (5) conversion of artwork; and (6) trade dress infringement, pursuant to N.J.S.A. 56:4-1 and New Jersey common law. On June 17, 2014, Defendants removed the case to this Court. Thereafter, in lieu of an answer, Defendants filed a motion to dismiss, arguing in part that Virginia law applies to Plaintiff's claims and that under Virginia law, Plaintiff's claims, are time-barred. Plaintiff opposed the motion to dismiss, contending that its claims are brought within New Jersey's applicable statute of limitations. On February 10, 2015, the Court determined that additional facts were necessary to conduct a choice-of-law analysis. Accordingly, the Court terminated Defendants' motion to

dismiss and ordered the parties to first conduct limited discovery on the choice-of-law question. The parties engaged in limited discovery, and each submitted supplemental briefs on this issue.

## II. Discussion

### a. Standard of Review

Although it is well established that choice-of-law analysis is a purely legal question, *NL Indus., Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 319 (3d Cir. 1995), the second prong of New Jersey's most significant relationship test is fact intensive and requires consideration of the facts specific to each case. *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007). The Court is tasked with this duty. In resolving a choice-of-law question, the court may look beyond the pleadings. *See e.g. Toll*, 596 Fed. Appx. at 111; *Nautilus*, 537 F.3d at 742; *Vaz*, 696 F.2d 379 at 386.[5]

However, once I have determined which state's law to apply to Plaintiff's claims, I will analyze whether its claims are barred by the relevant statute of limitations, assuming the accrual date alleged in the Complaint is true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589 (2007). An affirmative statute of limitations defense may be raised in a motion to dismiss under Rule 12(b)(6), if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Hanna v. U. S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975).

### b. Choice of Law: Actual Conflict of Law

---

[5] I note that while the parties dispute certain facts here, i.e. the length of time between their first and second contact, as well as the total number of in-person meetings that took place in Virginia, the choice-of-law analysis in this case does not turn on those disputed facts. The Court, therefore, need not make any findings of fact to resolve the choice of law question at hand.

As the Court explained in its previous Opinion, a federal court sitting in diversity jurisdiction must apply the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Gen. Star Nat'l Ins. Co. v. Liberty Mutual Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992). New Jersey has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws (the "Restatement"). *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 142-43 (2008). New Jersey's most significant relationship test consists of two prongs. The first prong of the analysis requires the court to examine the substance of the potentially applicable laws in order to determine if an actual conflict exists between the states' laws. *Id.* at 143-44 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). Where there is no actual conflict, no further analysis is necessary and the court applies the law of the forum state. *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997); *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (2007). However, if a conflict exists, the court must analyze the second prong and determine which jurisdiction has the most significant relationship to the particular claim at issue. *Camp Jaycee*, 197 N.J. at 136.

Here, the Court previously analyzed the laws at issue and determined that an actual conflict exists between Virginia and New Jersey law as to the majority of Plaintiff's claims, and therefore I must address the second prong of the choice-of-law analysis. Indeed, as I have stated previously, there is no dispute, that under Virginia law, all of Plaintiff's claims would either be subject to a two-year, four-year, or five-year statute of limitations. Defendants claim, and Plaintiff does not dispute, that Plaintiff's causes of action accrued, at the latest, on May 18, 2008, when Plaintiff first observed its competitors selling magnets with substantially similar designs to those manufactured for Plaintiff by ITC. Given that Plaintiff filed suit on May 7, 2014 -- nearly six years after the date of this discovery -- all of Plaintiff's claims would be time-barred under Virginia law. On the other

hand, under New Jersey law, a six-year statute of limitations applies to Plaintiff's claims of consumer fraud, conversion of property, conversion of artwork, breach of duty of loyalty, and trade dress infringement.[6] Therefore, assuming Plaintiff's causes of action accrued on May 18, 2008, these claims were brought within the applicable statute of limitations under New Jersey law. Consequently, a conflict exists between Virginia and New Jersey law as to these claims.

However, I find a conflict does not exist between the laws of these states as they pertain to Plaintiff's breach of contract claim. In New Jersey, claims of breach of a contract for the sale of goods are governed by a four-year statute of limitations. *See Ford Motor Credit Co. v. Arce*, 348 N.J. Super. 198, 200 (App. Div. 2002) (citing N.J.S.A. 2-725(1)). Thus if the parties' contract is for a sale of goods, Plaintiff's breach of contract claim would be time-barred under New Jersey law, as well as Virginia law. On the other hand, if it is not a contract for the sale of goods, a six-year limitations period would apply, and New Jersey and Virginia laws would conflict. *See Cnty. of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 644 (D.N.J. 2007), *as amended* (Nov. 5, 2007), *aff'd*, 351 F. Fed. Appx. 662 (3d Cir. 2009). Neither party raises the issue whether the contract in question is for the sale of goods, and consequently, for the purposes of my prior Opinion, I presumed that a six-year statute of limitations applied. However, upon closer inspection, the Court

---

[6] NJCFA claims are subject to a six-year statute of limitations. *DiIorio v. Structural Stone & Brick Co.*, 368 N.J. Super. 134, 142 (App. Div. 2004); N.J.S.A. § 2A: 14–1. Conversions claims regarding property are also governed by a six-year statute of limitations in New Jersey. *See e.g., Dynasty Bldg. Corp. v. Ackerman*, 376 N.J. Super. 280, 287 (App. Div. 2005); N.J.S.A. 2A:14-1. Claims alleging a breach of the duty of loyalty, under New Jersey law, are a type of fiduciary claim that is also subject to a six-year statute of limitations. *See Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Associates, Inc.*, 859 F. Supp. 2d 706, 715 (D.N.J. 2012) (citing N.J.S.A. 2A:14-1). Finally, statutory unfair competition claims are also governed by a six-year statute of limitations. *See e.g., Fox v. Millman*, 210 N.J. 401, 410 (2012); N.J.S.A. 2A:14-1.

finds that for the reasons set forth below, the four-year statute of limitations applies to Plaintiff's contract claim, as the parties' contract is for the sale of goods.

The contracts at issue are the proof sheets signed and submitted by Plaintiff to place magnet orders with Defendants. Compl. p. 11 ¶ 2. Plaintiff asserts that Defendants breached the contract by printing magnets with Plaintiff's proprietary designs for Defendants' own use, which exceeded the scope of the license granted to Defendants by the terms of the agreement. Compl. p. 11 ¶ 4. Because the parties' contract is a mixed contract involving the license of intellectual property as well as the sale of goods (magnets), I must determine whether it constitutes a contract for the sale of goods for the purposes of N.J.S.A. 2-725. This determination, turns on whether the sale of goods is the primary purpose of, or merely incidental to, the contract. *Tele-Radio Systems Ltd. v. DeForest Electronics, Inc.*, 92 F.R.D. 371, 373-74 (D.N.J.1981); *see also Docteroff v. Barra Corp. of America, Inc.*, 282 N.J. Super. 230, 240 (App. Div. 1995). In that regard, the court must "examine the whole transaction between the parties and look to the essence or main objective of the parties' agreement." *Tele-Radio* 92 F.R.D.at 373-74 (internal quotations omitted).

Here, the Court finds that the main purpose of the contract was plainly for a sale of goods, i.e. magnets, and the licensing term was incidental to the agreement; indeed, it was included only as one of the terms assigning the rights and responsibilities of the parties in connection with the sale of magnets. And while the intent of the parties is clear from the face of the agreement, I can further conclude that the license was collateral based on Plaintiff's allegation that it signed the proof sheets entirely ignorant of the existence of such a term. Therefore, because I find the agreement was for the sale of goods, under New Jersey law, Plaintiff's breach of contract claim is barred by the four-year statute of limitations.

Since under either Virginia or New Jersey law Plaintiff's breach of contract claim would be barred, I need not engage in further choice of law analysis as to this claim and the law of the forum state, New Jersey, applies. However, for Plaintiff's remaining claims, a conflict of law does exist, and I must go on to analyze the second step of the choice-of-law analysis to these claims.

      *c. Choice of Law: Most Significant Relationship*

Under the second step of the choice-of-law analysis, the court determines which state has the most significant relationship to the claim by weighing the factors set forth in the Restatement section that corresponds to Plaintiff's cause of action. *See, e.g.*, *Nafar v. Hollywood Tanning Sys.*, 339 F. Fed. Appx. 216, 220 (3d Cir. 2009) (citing *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 463 (D.N.J. 2009)); *Camp Jaycee*, 197 N.J. at 143-44. Plaintiff's claims fall into two separate categories addressed by the Restatement: (1) fraud and misrepresentation and (2) tort. Accordingly, each claim must be analyzed separately.

Plaintiff's claim of consumer fraud is governed by Section 148 of the Restatement ("Section 148"), which pertains to fraud and misrepresentation. *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 207 (3d Cir. 2013); *see also* Restatement (Second) of Conflict of Laws § 148. Plaintiff's claims regarding conversion of property, conversion of artwork, breach of duty of loyalty, and trade dress infringement are governed by Section 145 of the Restatement ("Section 145"), which concerns tort. *See, e.g.*, *Clark*, 2009 U.S. Dist. LEXIS 84093, at *50-51 (D.N.J. Sep. 14, 2009) (applying Section 145 to a breach of fiduciary duty claim); *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 431 (App. Div. 2011) (classifying conversion as a tort); *Benihana of Tokoyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 725 (D. Del. 2011) (applying Section 145 to a conversion claim under the most significant relationship choice-of-law analysis); *Winback*, 42 F.3d at 1433 (classifying trademark infringement as a "species of tort"); *see also* Restatement § 145(2).

*i. NJCFA Claim*

As stated above, choice-of-law analysis for NJCFA claims is governed by Section 148 of the Restatement. "Section 148 has two subsections: Section 148(1) applies when the defendant made the fraudulent representations in the same state in which the consumer relied on the representations, whereas Section 148(2) governs when the misrepresentations and the reliance occurred in different states." *Rapid Models & Prototypes, Inc. v. Innovated Solutions*, 71 F. Supp. 3d 492, 503 (D.N.J. 2014) (citing Restatement § 148); *see also Maniscalco*, 709 F.3d at 207. Both Defendants and Plaintiff argue, unconvincingly, that Section 148(1) should apply in the instant case, claiming misrepresentations were made, received, and relied on entirely in either Virginia or New Jersey, respectively.

Defendants claim Plaintiff admitted in its answers to Defendants' interrogatories that Defendants' misrepresentations were both sought and received in Virginia, when Plaintiff visited Defendants' Virginia office in 2007. Defs.' Mem. p. 10 (citing Pl's Answer to Interrog. Nos. 1 & 4). Defendants further contend that although Plaintiff does not affirmatively state that it relied on the assurances in Virginia, "it is reasonable to infer that it was in Virginia at the time of that communication, when Plaintiff apparently decided to continue its relationship with ITC." *Id.* at 10. However, this argument misconstrues Plaintiff's Complaint and its answers to Defendants' interrogatories, which both refer to Ms. Moss' alleged misrepresentations made to Ms. Kessler during their telephone conversation regarding the language of the proof sheet. Pl's Answer to Interrog. No. 1; Compl. p. 5-6 ¶¶ 17-19. Indeed, the alleged misrepresentations were made by Ms. Moss in Virginia while Ms. Kessler received and relied on these representations in New Jersey. Defendants' references to later interactions that occurred only in Virginia are not probative, because it is the substance of this phone call that forms the basis for Plaintiff's consumer fraud

11

claim. Similarly unpersuasive, Plaintiff's argument in favor of applying Section 148(1) simply ignores the fact that Ms. Moss was in Virginia during the conversation in question. Because the alleged misrepresentation was made in a different state from which it was received and relied upon, Section 148(2) of the Restatement must apply. I will turn to that discussion.

Under Section 148(2), the court weighs the following factors to determine which state has the most significant relationship to the claims:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement § 148(2). The relative importance to each of these factors in a given case "should be determined in light of the choice-of-law principles stated in § 6 [of the Restatement]" ("Section 6"). Restatement § 148 cmt. e. "Reduced to their essence, the section 6 principles are: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee*, 197 N.J. at 147 (internal quotations omitted).

When I apply these factors to the telephone conversation between Ms. Kessler and Ms. Moss, during which the alleged fraud purportedly occurred, I find that factors (a), (b) and (d) weigh in favor of applying New Jersey law, factor (c) weighs in favor of applying Virginia law, and factors (e) and (f) do not weigh strongly in favor of either. Factors (a) and (b) weigh in favor of applying New Jersey law, because Ms. Kessler was in New Jersey when she received the alleged

misrepresentations from Ms. Moss and immediately acted in reliance on this information by signing the proof sheet and faxing the signed copy to ITC. Factor (d) weighs slightly in favor of applying New Jersey law, because although Plaintiff operates in New Jersey and Defendants operate in Virginia, the "domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant" in consumer fraud cases because "financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship." *Maniscalco*, 709 F.3d at 208 (quoting Restatement § 148 cmt. i).

Since Ms. Moss was in Virginia when she made these alleged misrepresentations, factor (c) weighs in favor of applying Virginia law. As to factor (e), the "tangible thing" at issue in this transaction was the order of magnets that were to be produced in Virginia and then shipped to New Jersey. However, at the time of the conversation between Ms. Kessler and Ms. Moss, the magnets had not yet been produced, and therefore, did not exist in a particular location. Consequently, this factor is neutral as to which law to apply. Finally, factor (f) is neutral as Plaintiff's performance under the contract did not have a locus in a particular state. Plaintiff sent payments from New Jersey to Virginia, an action which did not occur in a single state. *See* Restatement § 148 cmt. i (explaining that this factor carries weight only if "at least the great bulk of plaintiff's performance is to take place in a single state"). Thus, only factor (c) weighs in favor of applying Virginia law, while (a), (b), and (d) weigh in favor of applying New Jersey law, and (e) and (f) are neutral.

I additionally note that the fact that Defendants are headquartered in Virginia and their alleged unlawful conduct emanated from Virginia does not supersede the numerous contacts with Plaintiff's home state of New Jersey. As the Third Circuit has advised, when Section 148 is applied to cases where defendant is incorporated in one state and plaintiff is domiciled in a different state, the mere fact that unlawful conduct emanated from the state where the defendant resides "will not

13

supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement § 148(2)." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 449 (D.N.J. 2012) (internal quotation marks omitted) (affirmed by the Third Circuit in *Maniscalco*, 709 F.3d at 209). In this case, New Jersey's contacts to the place where Plaintiff acted in reliance upon the defendant's representations, the place where Plaintiff received the representations, and the place where Plaintiff does business outweigh Virginia's contacts to the place where Defendants operate and the place where unlawful conduct emanated from. Accordingly, taken as a whole, the Section 148 factors weigh in favor of applying New Jersey law to plaintiff's NJCFA claim.

Section 6 of the Restatement also supports the position that New Jersey has a greater interest in the litigation of Plaintiff's consumer fraud claim. First "the interests of interstate comity favor applying the law of the individual claimant's own state," because applying any other state's laws would frustrate the domiciliary state's legislative policies. *Maniscalco*, 709 F.3d at 209 (citing *Fink v. Ricoh Corp.*, 365 N.J. Super. 520, 585 (Law Div. 2003)) The second factor, interests of the parties, deals with what law the parties reasonably expected would apply in light of their transaction. *Montich*, 849 F. Supp. 2d at 450 (citing *Fu v. Fu*, 160 N.J. 108, 123 (1999) (reasoning that when considering the interests of the parties a court should "look to what law the parties reasonably expected would apply in light of their transaction"). The record does not contain sufficient facts to determine what law the parties reasonably expected would apply to their agreement.[7] But, this factor is less important to the analysis of a tort or fraud claim, because

---

[7] Defendants have argued that the Court should presume Plaintiff expected Virginia law to apply to their business relationship, because before filing suit in New Jersey, Plaintiff initially retained a Virginia lawyer who sent cease and desist letters to Defendants citing Virginia law. Defs.' Mem. p. 12. I do not find this evidence persuasive as it does not speak to the Plaintiff's

14

"persons who cause injury on non-privileged occasions, particularly when the injury is unintentionally caused, usually act without giving thought to the law that may be applied to determine the legal consequences of this conduct" and further "such persons have few, if any, justified expectations in the area of choice of law to protect." Restatement § 145 cmt. b. The third factor, the interests underlying the field of tort law, favors neither state. "Consumer fraud law serves the dual purposes of compensating injured parties," which favors New Jersey law, "and deterring corporate misconduct," which favors Virginia law in this case. *Maniscalco*, 709 F.3d at 210. Similarly, the fourth factor, the interests of judicial administration, does not weigh in favor of either state. Moreover, "New Jersey courts have found that the interests of judicial administration must yield to the interests of the other factors." *Id*. at 210 (citing *Fu*, 160 N.J. at 124). Finally and most importantly, the interest of New Jersey in having its law apply to its own consumers outweighs the interests of Virginia in protecting out-of-state consumers from consumer fraud. *See Id.* at 210 ("[T]he interest of South Carolina in having its law apply to its own consumers outweighs the interests of New Jersey in protecting out-of-state consumers from consumer fraud."). Therefore, in light of the principals of Section 6 and Section 148(2), the Court finds that New Jersey has the most significant relationship to Plaintiff's NJCFA claim.[8]

---

expectations vis-à-vis its business relationship with Defendants before it discovered any potential cause of action.

[8] Notwithstanding the application of New Jersey law to Plaintiff's NJCFA claim, the Court has not yet found that Plaintiff has met the pleading requirements of New Jersey law with respect to its NJCFA claim. Whether Plaintiff can be considered as a "consumer" under the NJCFA, rather than a wholesale buyer of goods for resale, for example, has not been determined by this Court, and indeed, I voice my skepticism as to whether it is a consumer under the facts of this case. *See e.g. Papergraphics Int'l, Inc. v. Correa*, 389 N.J. Super. 8, 13 (App. Div. 2006*)* ("[A] wholesale buyer of goods intended for resale is not a 'consumer,' and the sale is a non-consumer transaction outside the ambit of CFA protection."); *see also Lithuanian Commerce Corp. v. Sara Lee Hosiery*,

15

*ii. Tort Claims*

Plaintiff asserts four claims sounding in tort: conversion (two counts), breach of fiduciary duty, and common law trade dress infringement. Plaintiff claims that Defendants caused Plaintiff's economic loss when it converted Plaintiff's proprietary magnet designs, sold them as its own and attempted to persuade customers to deal directly with Defendants instead of Plaintiff. Compl. p. 10 ¶¶ 3-6, p. 12 ¶¶ 1-5. Plaintiff further avers Defendants owed Plaintiff a "duty of loyalty" as their customer and that Defendants breached this loyalty by converting Pet Gifts designs and selling them as their own. *Id.* at p. 12 ¶¶ 1-5. Finally, Plaintiff alleges that Defendants' production of identical magnets with identical packaging "deceives consumers as to the origin of the products." *Id.* at p. 15 ¶¶ 4-8.

These claims are governed by Section 145 of the Restatement. *See, e.g., Clark*, 2009 U.S. Dist. LEXIS 84093 at *50-51; *Bondi,* 423 N.J. Super. at 431; *Benihana*, 828 F. Supp. 2d at 725; *Winback*, 42 F.3d at 1433; *see also* Restatement § 145(2). Under Section 145, the "[c]ontacts to be taken into account" in assessing the most significant relationship to such claims include:

> "(a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered."

Restatement § 145(2). As with Section 148 of the Restatement, the factors set forth in Section 145(2) are also reviewed in light of the principals stated in Section 6. Restatement § 145(1). Restatement § 145(1).

---

179 F.R.D. 450, 469 (D.N.J. 1998). Because the issue is dispositive to this claim, the Court directs Defendants to address it in their forthcoming motion to dismiss.

When Plaintiff's tort claims are analyzed under Section 145(2), factor (a) weighs in favor of applying New Jersey law, while factor (b) weighs in favor of applying Virginia law, and factors (c) and (d) are neutral as to which state's law to apply. As to the first factor, Defendants argue that because ITC's magnet sales are much higher in Virginia than in New Jersey, the primary place of Plaintiff's injury is Virginia. Defs.' Mem. p. 13-14. Plaintiff counters that the locus of its injury is New Jersey, where Plaintiff primarily conducts its business. Pl.'s Mem. in Supp. of Applying N.J. Law. p. 14. While both ITC and Pet Gifts market their magnets throughout the United States, "[t]he effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the [P]laintiff's headquarters or principal place of business," New Jersey. Restatement § 145 cmt. f. Thus, factor (a) weighs in favor applying New Jersey law.

Factor (b), the place where the conduct causing injury occurred, is less clear. Indeed, although Defendants sold and shipped their products throughout the United States, the products were manufactured in, and shipped from, Virginia. There is not a consensus on whether conduct involving the distribution of goods to multiple states is located, under the meaning of Section 145, at the place of manufacturing, or at the place where goods are shipped. *See Fink*, 365 N.J. Super. at 587 (defendant camera manufacturer's alleged conduct causing injury was found to be located where third party retailers distributed the cameras and advertising brochures); *but see Irby v. Novartis Pharms. Corp.,* 2011 N.J. Super. LEXIS 3188, at *14 (Law Div. Nov. 18, 2011) (defendant pharmaceutical manufacturer's alleged conduct causing injury was found to be located at defendant's place of manufacturing, not place where drug was distributed). In the instant case, I find that the conduct causing injury occurred primarily in Virginia, wherein Defendants manufactured, packaged, and shipped their goods.

Furthermore, in evaluating claims where injury occurred in multiple states, factor (a) can be given less weight than factor (b) if the location of injury is merely fortuitous and "defendant had little or no reason to foresee that [its] act would result in injury in a particular state." Restatement § 145 cmt. e. Here, Defendants were aware, by virtue of their business relationship with Plaintiff, that their alleged tortious acts against Plaintiff would result primarily in injury to Plaintiff in New Jersey. Thus this balancing rule does not apply, and factor (a) should be given weight equal to factor (b).

Factor (c), the place of business of the parties, is neutral because Plaintiff and Defendants operate primarily in New Jersey and Virginia, respectively. Finally, factor (d), the place where the relationship is centered, is also neutral, because the parties' relationship is not centered on any one particular state. While Ms. Kessler initially met Ms. Moss in Virginia, negotiations between the parties generally occurred remotely, with Ms. Kessler in New Jersey and Ms. Moss in Virginia. Additionally, the products manufactured in Virginia were predominantly shipped to New Jersey. Althgouh one or two business meetings seem to have occurred between the parties in Virginia and Plaintiff accepted delivery of magnets in Virginia on at least two occasions, this does not, as Defendants argue, center the relationship in Virginia. *See* Defs.' Mem. p. 14-15. Rather, these incidents are exceptions to the parties' regular pattern of conducting business between Virginia and New Jersey.

Because the factors under Section 145 weigh equally in favor of applying New Jersey and Virginia law, I must rely on the Section 6 factors to determine which state has the greatest interest in Plaintiff's tort claim. *See* Restatement § 145(1). The Section 6 analysis above with respect to Plaintiff's consumer fraud claims is similarly applicable to Plaintiff's tort claims. *See Clark*, 2009 U.S. Dist. LEXIS 84093 at *51 (applying the same Section 6 analysis to fraud claim under Section

18

148 and breach of fiduciary duty claim under Section 145). First, to avoid frustrating the legislative policy of the claimant's own state, the interests of interstate comity favor applying the law of the domiciliary state. *Maniscalco*, 709 F.3d at 209 (citing *Fink*, 365 N.J. Super. at 585) Second, as above, the interests of the parties, are less important in the analysis of a tort or fraud claim. Restatement § 145 cmt. b. Third, as with consumer fraud, the interests underlying the field of tort law favor equally both compensating injured parties and deterring corporate misconduct. *See Maniscalco*, 709 F.3d at 210. Fourth, again, "the interests of judicial administration must yield to the interests of the other factors." *Id.* (citing *Fu*, 160 N.J at 124). Finally, when addressing the competing interests of the states, the court must consider "whether application of a competing state's law under the circumstances of the case will advance the policies that the law was intended to promote." *Fu*, 160 N.J at 125. New Jersey and Virginia's policies regarding the relevant tort laws are similar to their policies regarding consumer fraud law in that these laws were also designed to protect their residents from injury. It follows that, as with consumer fraud, New Jersey would be more interested in protecting its own residents from tortious injury than Virginia would be interested in protecting out-of-state residents from tortious injury. Thus, under Section 6, New Jersey has a greater interest in the litigation of Plaintiff's tort claims than Virginia.

Based on my analysis under both Section 145(2) and Section 6, the Court applies New Jersey law to Plaintiff's claims of conversion, breach of fiduciary duty, and common law trade dress infringement. Therefore, since Plaintiff brought suit within six years its tort claims are not time-barred.[9]

---

[9] While the Court applies New Jersey's statute of limitations, the Court does not comment upon whether Plaintiff has met the pleading requirements of New Jersey law with respect to its tort claims, or as discussed above, its NJCFA claim.

### III. Conclusion

The Court dismisses count three, Plaintiff's breach of contract claim. Further, the Court determines that New Jersey law applies to the remainder of Plaintiff's claims. Defendants are directed to re-file their motion to dismiss taking into account the application of New Jersey law to the remainder of Plaintiff's claims.

Date: October 2, 2015

/s/ Freda L. Wolfson
U.S. District Judge